UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**STAR LEASING CO.,**

    **Plaintiff,**                                         Case No. 2:06-cv-10
                                                       JUDGE GREGORY L. FROST
    **v.**                                                          Magistrate Judge Norah McCann King

**MICHAEL'S COOPERAGE CO., INC.,**

    **Defendant.**

## ORDER

This diversity action is before the Court for consideration of Defendant's motion to dismiss (Doc. # 22), Plaintiff's memorandum in opposition (Doc. # 26), and Defendant's reply memorandum (Doc. # 27).  For the reasons that follow, the Court finds the motion not well taken.

### I. Background

Plaintiff, Star Leasing Company, is an Ohio-based company engaged in the business of leasing semi-trailers.  On May 1, 2003, Plaintiff entered into a lease and service agreement with the Illinois-based Defendant, Michael Cooperage Company, Incorporated (now known as Pershing Industries, Incorporated).  Pursuant to the lease, Plaintiff supplied Defendant with 117 semi-trailers.  In November 2005, however, Plaintiff reportedly learned that Defendant had entered into an agreement to sell its assets to Greif USA, LLC.  Consequently, Plaintiff wrote to Defendant demanding adequate assurance that Defendant would continue to perform under their lease.  Ohio Revised Code § 1310.40 provides for the right to seek such assurance:

> If reasonable grounds for insecurity arise with respect to the performance of either party, the insecure party may demand in writing adequate assurance of

>due performance. Until the insecure party receives that assurance, if commercially reasonable, the insecure party may suspend any performance for which he has not already received the agreed return.

Ohio Rev. Code § 1310.40(B).

Defendant's counsel responded via a letter in which he confirmed the asset sale, but stated that he needed more time to review the lease.  No assurance of performance was given.  Eight days later, on December 9, 2005, Defendant's counsel informed Plaintiff that Defendant was terminating its existence and desired to return the leased trailers.  The companies agreed that Defendant would have until noon on December 13, 2005 to provide Plaintiff with adequate assurance that it would perform under the lease.

That deadline passed without Plaintiff receiving such assurance.  Ohio Revised Code § 1310(C) provides that "[a] repudiation of the lease contract occurs if assurance of due performance adequate under the circumstances of the particular case is not provided to the insecure party within a reasonable time, not to exceed thirty days after receipt of a demand by the other party."  Accordingly, Plaintiff served written notice stating that Defendant was in default of the lease, terminating the lease as of December 18, 2005, and demanding the return of its trailers by December 19, 2005.  (Doc. # 12, at 3-4 ¶¶ 15, 18; Doc. # 12, Ex. C, at 1-2.) Plaintiff also filed suit against Defendant in the Franklin County Common Pleas Court.  (Doc. # 2.)

Defendant subsequently removed the action to this Court.  (Doc. # 1.)  Following removal, Plaintiff filed a four-count amended complaint (Doc. # 12).  Count One asserts a cause of action for breach of the lease, Count Two asserts a statutory cause of action under Ohio's enactment of the Uniform Commercial Code, Count Three is for replevin of thirty-five specified

trailers, and Count Four is for conversion of these trailers. (Doc. # 12, at 7-8.) Defendant has filed a motion to dismiss the amended complaint in its entirety. (Doc. # 22.) The parties have completed briefing the issues involved, and the motion to dismiss is now ripe for disposition.

## II. Discussion

### A. Standard Involved

Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dismissal is warranted under that rule " 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)), *cert. denied*, 520 U.S. 1251 (1997)). The focus is not on whether Plaintiff will ultimately prevail, but rather on whether he has offered " 'either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.' " *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988)).

In making such a determination, the Court must " 'construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein.' " *Sistrunk*, 99 F.3d at 197 (quoting *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994)). The Court need not, however, accept conclusions of law or unwarranted inferences of fact. *Perry v. American Tobacco Co., Inc.*, 324 F.3d 845, 848 (6th Cir. 2003). The Court may also consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

B. Analysis

Defendant argues that this Court should dismiss the amended complaint in its entirety for four basic reasons. This Court shall address each argument in turn.

Citing § 13(a) of the lease, Defendant initially asserts that Plaintiff cannot obtain future unaccrued damages because the plain language of the lease links the right to such damages only to Defendant's default in payment. Section 13(a) of the lease sets out two types of default provisions. First, the section presents a general default provision encompassing a failure to pay, a failure to perform "any of the covenants, conditions, provisions or terms of this Agreement or any schedule relating thereto," a material adverse change in financial circumstances, and a default of any other agreement between the parties. (Doc. # 12, Ex. A, at 5.) The section then discusses repossession rights before addressing a second type of default provision: the ramification for a specific default for failure to pay. This latter provision is of course a subset of the first, general "catch-all" default provision, but the specific default provision's import lies in the fact that it creates a narrow remedy tied only to a failure-to-pay default and not to default generally: "[D]efault by Customer in the payment when due of any lease payment or amount required to be paid by Customer hereunder" entitles Plaintiff to "damages in an amount equal to all Fixed Charges for the terminated trailers multiplied by the number of weeks and/or months remaining from the date of termination to the expiration of the stated lease term, including miles guaranteed but not billed and paid by Customer." (Doc. # 12, Ex. A, at 5.)

In other words, a default in payment permits the recovery of future damages, but any other type of default does not trigger the right to such damages. Plaintiff's own construction in the amended complaint of the default provision tracks this understanding. Plaintiff pled:

4

> The Lease provides that Star is entitled, upon such termination for non-payment default, to additional damages in an amount equal to $132,744.55, representing Fixed Charges for the terminated trailers multiplied by the number of months remaining from the date of termination to the expiration of the term of the Lease.

(Doc. # 12, at 5 ¶ 20.) According to Defendant, the end result of this construction is that, because Plaintiff has not alleged a default by failure to pay–and Defendant asserts cannot, because it has continued to make payments–Plaintiff cannot recover for future payments by relying on the lease terms.

After Defendant failed to give Plaintiff an assurance of performance, Plaintiff was entitled to treat the lease as repudiated. *See Restatement (Second) of Contracts* § 251, cmt. b ("If the obligee does not, within a reasonable time, obtain adequate assurance of due performance, he may ... treat the obligor's failure to provide such an assurance as a repudiation."); *see also* Ohio Rev. Code § 1310.40(C) . The cited *Restatement* section is drawn from the Uniform Commercial Code, *see Restatement (Second) of Contracts* § 251, Reporter's Note, which means that it incorporates U.C.C. § 2-609, cmt. 2 (interpreting § 2-609 to mean that "the aggrieved party may treat the contract as broken if his reasonable grounds for insecurity are not cleared up within a reasonable time"). Together they explain that Defendant's repudiation is of notable effect, as the Uniform Commercial Code drafters have recognized:

> A failure to provide adequate assurance of performance and thereby to re-establish the security of expectation, results in a breach only "by repudiation" ... . Therefore, the possibility is continued of retraction of the repudiation under the section dealing with that problem, *unless the aggrieved party has acted on the breach in some manner*.

U.C.C. § 2-609, cmt. 5 (emphasis added).

Here, Plaintiff acted on the repudiation by promptly terminating the lease and filing suit

5

in state court. By acting on the anticipatory breach is such a manner, Plaintiff therefore materially changed its position before any action by Defendant nullified the repudiation (and extinguished any claim by Plaintiff). *See Restatement (Second) of Contracts* § 251 and § 256 (noting that obligor's actions could nullify repudiation before obligee changed its position). The *Restatement* specifically provides that "[c]ancellation of the contract or the commencement of an action claiming damages for total breach would be sufficient" to constitute a material change in position or to indicate that the repudiation is viewed as final. *Restatement (Second) of Contracts* § 256, cmt. c. The end result is that Plaintiff could sue to recover the full amount of the lease payments for the full term of the lease. *See Restatement (Second) of Contracts* § 251 cmt. b ("If [the obligee] chooses to treat the obligor's failure as a repudiation, ... it may give him a claim for damages for total breach")and § 256, cmt. a ("A repudiation may ... give rise to a claim for damages for total breach"). Thus, considering that Defendant's repudiation of its obligation to pay constitutes the specific § 13(a) default–the payment breach–triggering Plaintiff's right to future rent for the full term of the lease, the extant question becomes whether such a provision is enforceable under Ohio law.

The parties agree that Ohio law applies to this case. Thus, Plaintiff understandably relies on the following statutory authority to bolster its claim under the contract language:

> If either party repudiates a lease contract with respect to a performance not yet due under the lease contract, the loss of which performance will substantially impair the value of the lease contract to the other party, the aggrieved party may ... Resort to any right or remedy upon default under the lease contract or section 1310.01 to 1310.78 of the Revised Code.

Ohio Revised Code § 1310.41(C). In its second argument for dismissal, however, Defendant argues that even if applicable, the liquidated damages provision of the lease is nonetheless

unenforceable–thus negating the import of the statute upon which Plaintiff relies.

Defendant reasons that the acceleration clause is not enforceable as a matter of public policy because it fails to include a requirement that Plaintiff mitigate its damages. To support this contention, Defendant cites to *Frank Nero Auto Lease, Inc. v. Townsend*, 64 Ohio App.2d 65, 411 N.E.2d 507 (Ohio 8th App. Dist. 1979). In that case, the state court addressed a motor vehicle lease agreement that permitted repossession and recovery of accelerated future rents upon the lessee's default; notably, the lease failed to contain a mitigate requirement. 64 Ohio App.2d at 68, 411 N.E.2d at 511. The state court of appeals held that the punitive accelerated damages provision was against public policy and thus unenforceable. 64 Ohio App.2d at 69, 411 N.E.2d at 511. *See also Information Leasing Corp. v. Chambers*, 152 Ohio App.3d 715, 727-30, 789 N.E.2d 1155, 1164-66 (Ohio 1st App. Dist. 2003).

There is no indication, however, that the lease agreements addressed in the cases Defendant cites contained a savings clause *such as that set forth in the lease here*. Although the agreements in those cases might have contained severability clauses–and presumptively did so, given that the state courts severed the offending provisions–the distinction between a clause permitting severance and a clause mandating amendment is important.

Plaintiff therefore counters that the instant lease's severability clause is an amendment clause that saves the future unaccrued damages provision. The lease states in § 20 that "[a]ny provision of this Agreement prohibited by law will be deemed amended to conform to such law without in any way invalidating or affecting the remaining provisions." (Doc. # 12, Ex. A, at 7). This provision does not strike an offending component of the lease and save the rest, but instead specifically calls for amendment of the offending component to conform to Ohio law. Thus,

Plaintiff concludes, "this Court can quite properly follow the parties' agreement to cure simply by subjecting the Lease's accelerated damages clause to [Plaintiff's] obligation to mitigate (or minimize) its damages."  (Doc. # 26, at 9.)

Courts in various jurisdictions have at times adopted this approach.  *See e.g., General Telephone Co. of Wisconsin v. Labor and Industry Review Commission*, 315 N.W.2d 727, 1981 WL 138928, at *2 (Wis. App. Oct. 26, 2981) (unpublished table decision).  Courts in Ohio have also engaged in this practice.  *See Shay v. Shay*, 164 Ohio App.3d 518, 525, 843 N.E.2d 194, 199 (Ohio 6th App. Dist. 2005); *Wheeler v. Wein*, No. 77AP-241, 1977 WL 200318, at *3 (Ohio 10th App. Dist. Aug. 2, 1977).  Underlying such action is the apparent, inherent public policy concern that courts should both enforce contracts as written (which would include construing them as intended to account for desired amendments) and attempt to interpret a contract to give effect to its terms as possible.

In accord with the express terms of the contract, the Court does just that here.  But for the amendment clause, this Court would agree with Defendant's argument.  In light of the amendment clause, however, Defendant's proposed course of conduct overreaches by demanding that the Court act against the lease language by severing rather than amending the accelerated damages provision.  The lease does not contemplate striking a provision that can be redeemed by amendment.  Accordingly, the Court holds that the lease's accelerated damages provision imposes a requirement of minimization of damages.  Plaintiff's first claim for future unaccrued damages pursuant to the terms of the lease therefore survives the motion to dismiss.

The next issue then becomes whether Plaintiff can recover any damages, aside from the lease agreement's accelerated damages provision, pursuant to Ohio Revised Code Chapter 1310.

That chapter contains " 'gap filling' remedies" that could apply in place of the lease's accelerated damages provision. *Information Leasing Corp.*, 152 Ohio App.3d at 728, 789 N.E.2d at 1164. In its third argument for dismissal, Defendant asserts that Plaintiff has failed to allege facts to support such a statutory-based cause of action.

Defendant argues that under Ohio Revised Code § 1310.74, a lessor is entitled to accrued rent only through the date of repossession of the goods and to future damages only when the present market rent is less than the lease amount. Because Plaintiff failed to allege that the present market rent is lower than the lease rent, Defendant argues, Plaintiff has no compensable damages and cannot recover the unaccrued future rent sought.

Assuming *arguendo* that Defendant is correct in stating what Plaintiff must prove, a proposition that the Court need not decide at this juncture, this Court nonetheless disagrees that it must consequently dismiss Count Two of Plaintiff's amended complaint. Plaintiff has not pled that the present market rent for semi-trailers falls below the lease rent, but this failure to pled such an allegation does not prove dispositive.

It is well settled that "[a] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988) (citations omitted). The question is what level of detail must be included. Federal Rule of Civil Procedure 8(a) requires only that "[a] pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." This statement "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson,*

9

355 U.S. 41, 47 (1957)).  In light of the goals of notice pleading and this Court's Fed. R. Civ. P. 8(f) duty to construe all pleadings as to do substantial justice, the Court cannot say that Plaintiff has failed to put Defendant on fair and adequate notice of the nature and essential factual component of Count Two.

Although Defendant would respond that pleading mitigation is an essential component of the claim, this is a question of damages.  If indeed Plaintiff must satisfy the damages calculation that Defendant promotes–if this is indeed the only damages formula available–then Plaintiff can attempt to do so at the appropriate juncture; Plaintiff need not prove its case at the pleading stage.  Rather, Plaintiff must only place Defendant on notice of its claims, allege facts sufficient to support the causes of action asserted, and pray for relief.  Even if Plaintiff has a duty to mitigate or minimize its damages, the failure to do so is an affirmative defense and not a component of the claim to be pled.  By inference, Plaintiff has satisfied that meager standard here.  There has been no waiver of monetary damages.

Finally, in its last ground for dismissal, Defendant contends that Plaintiff's claims for replevin and conversion (as well as for damage to the trailers) are not enforceable at this time.  Defendant points this Court to § 14 of the lease, which provides:

> In the event of any holding over of a trailer or failure to return the same for any reason after the expiration or termination of the lease term as to any trailer, the holding over will be deemed a week-to-week lease at the same lease charges as provided in the Schedule "A" and shall be subject to all terms and conditions of this Agreement.

(Doc. # 12, Ex. A, at 5.)  Thus, Defendant argues, because there has been no default of rent payments, the lease termination has only resulted in the creation of a week-to-week lease at the existing rates and terms contained within the terminated lease.  Unless and until a default of

10

payment occurs, the replevin and conversion claims are not ripe.

Plaintiff counters that such an interpretation of the lease is illogical. The company explains that the lease provides that Plaintiff "shall have the right, without notice to Customer, to increase the lease charges *or terminate the Agreement* at any time during such period of holding over." (Doc. # 12, Ex. A, at 5 (emphasis added).) Thus, Plaintiff reasons, because it has demanded the return of its trailers, it is entitled to pursue its legal remedies rather than wait for Defendant to tire of the week-to-week leasing.

Whether Plaintiff has exercised the lease provision purporting to enable it to increase the week-to-week rent is immaterial to the issue of whether Plaintiff possesses valid claims for replevin, conversion, or for damage to the trailers. Of import to these claims is that the lease *also* enables Plaintiff to terminate the involuntary week-to-week lease created by the holdover and gives rise to the contested claims. The lease provides that "Lessor shall have the right ... to ... terminate the Agreement at any time during such period of holding over" (Doc. # 12, Ex. A, at 5) which suggests that the failure to return a trailer can enable Plaintiff to terminate the entire lease agreement; the lease preamble defines the "Agreement" as the lease and "all Schedules and Exhibits hereto" (Doc. # 12, Ex. A, at 1). But Schedule "N" sets forth variable lease terms for specified trailers, with specified trailers having often different terms. In other words, if "the Agreement" means only the lease agreement and not a holdover lease incorporating the lease agreement, then Plaintiff's right to terminate the lease upon the holdover of the last trailer(s) rented under that agreement would be illusory. There would be nothing left to terminate, because the lease agreement would have ended and the parties would now be in a week-to-week arrangement. This construction of the lease provision would lead to an absurd result.

11

Similarly, if "the Agreement" does not encompass the holdover week-to-week lease as well as the "main" lease, then the lease could be construed to contradict itself.  Section 14 of the lease provides that in the event of a holdover following the expiration or termination of a lease term for a trailer, Plaintiff "shall have the right, without notice to Customer, to increase the lease charges or terminate the Agreement at any time during such period of holding over."  (Doc. # 12, Ex. A, at 5.)  This right-to-terminate without notice must apply to the holdover lease, or else § 13(a)'s termination by 5-day written notice provision would be incorporated and preclude such prompt, without-notice termination.  The Court qualifies this last observation, however, given that § 13(a) contemplates termination of the entire agreement ("this Agreement") while § 14 contemplates first a potential holdover lease "[u]pon expiration or termination of the Agreement as to any trailer" and then, in the event of a holdover "after the expiration or termination of the lease term as to any trailer," the right to "terminate the Agreement." (Doc. # 12, Ex. A, at 5 (emphasis added).)

Giving the words of the lease full meaning, then, the Court concludes in an effort to harmonize the foregoing provisions that when the lease gives Plaintiff the right to terminate "the Agreement" in the event of a holdover, it must mean that "the Agreement" is both the existing lease *and* the holdover extension.  Plaintiff asserts that it has terminated the lease and demanded its property back.  Accordingly, the holding over lease has been terminated by Plaintiff's demand, and Plaintiff may assert claims for replevin and conversion.

### III.  Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss.  (Doc. # 22.)

**IT IS SO ORDERED**.

                                          s/ Gregory L. Frost
                                     GREGORY L. FROST
                                     UNITED STATES DISTRICT JUDGE